1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

8
9
10

| JOEL RICHARD  HERNANDEZ, | ) | Case No. 13cv1217-BEN (BLM) |
|---|---|---|
| Petitioner, | ) | **REPORT  AND  RECOMMENDATION FOR  ORDER  DENYING  PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | ) | |
| DANIEL PARAMO, et al., | ) | [ECF No. 1] |
| Respondents. | ) | |
| | ) | |

11
12
13
14
15
16
17
18

19    This Report and Recommendation is submitted to United States District Judge Roger T.

20  Benitez pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United

21  States District Court for the Southern District of California.

22         On May 21, 2013, Petitioner Joel Richard Hernandez, a state prisoner who is proceeding

23  *pro se* and *in forma pauperis*, commenced these habeas corpus proceedings pursuant to 28

24  U.S.C. § 2254.  ECF No. 1.  Petitioner challenges the validity of his convictions for assault with

25  a deadly weapon and making a criminal threat, as well as the related sentencing enhancements.

26  Id. at 2.  Respondent filed an Answer and Points and Authorities on September 5, 2013.  ECF

27  Nos. 6 & 6-1.  Petitioner filed a Traverse on October 30, 2013.  ECF No. 11.

28         This Court has considered the Petition, Answer, Traverse, and all supporting documents

1  filed by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's

2  Petition for Writ of Habeas Corpus be **DENIED**.

3  **FACTUAL AND PROCEDURAL BACKGROUND**

4       The following facts regarding Petitioner's crimes are taken from the Court of Appeal,

5  Fourth Appellate District Division One of the State of California affirmation of the judgment of

6  the Superior Court of San Diego County. <u>People v. Hernandez</u>, Super. Ct. No. SCD218883,

7  Lodgment 6.

> [Petitioner Joel R.] Hernandez is a member of the Clicka faction of the Logan Heights criminal street gang. He picked up Jose de Jesus Vergara and took him to a party at the home of Jose Delgado. Also at the party were Jesus Andres Becerra-Cesena and Javier del Castillo.
>
> At some point during the evening, Hernandez and Delgado got into an argument concerning a recent car exchange Hernandez had made with Delgado. Vergara tried to calm Hernandez down and told him, "Take it easy." When Vergara began to make fun of Hernandez, Hernandez punched him in the face and pulled him into the street to fight. Although Vergara survived the attack, he suffered several stabs and cuts to his face, neck, chest, axilla and forearms, some of which were life-threatening.
>
> Becerra noticed Vergara was bleeding from the chest and intervened to break up the fight. After Becerra separated Hernandez from Vergara, he heard Hernandez shout, "'Logan, bitch' or 'motherf***ers,' something like that, repeatedly."
>
> Hernandez then began to walk towards the door of Delgado's house, where Delgado and del Castillo were standing. Hernandez shouted at them and demanded the keys to his car. Among the things he shouted were the following: (1) "You're going to pay for this, you f***er"; (2) "I'm from Logan"; (3) "You think you're better than me?"; (4) "You're not better than me"; and (5) "I control the place." Hernandez also shouted that he was going to retrieve a handgun from his home across the street and return to shoot them all. After Hernandez got the keys to his car, he left on foot.
>
> The following morning, Delgado received on his telephone a voice mail message from Hernandez. Hernandez accused Delgado of having "snitched" on him to the police; threatened to kill Delgado; and said that "he didn't give a f***, that he's Logan and he don't care."

Lodgment 6 at 2-3.[1]

---

[1]This Court presumes the state court's factual determinations to be correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254 (e) (1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003); <u>see also</u> <u>Parke v. Raley</u>, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness).

On September 30, 2009, a jury found Petitioner guilty of the crimes of assault with a deadly weapon and making a criminal threat (based on the statements Petitioner made at the party after the fight with Vergara) but not guilty on the crimes of attempted murder, dissuading a witness by force or threat, and making a criminal threat (based on the message left on Delgado's voice mail). Lodgment 1, Vol. 1 at 258-63; Lodgment 3 at 3; Lodgment 6 at 5. The jury also found true the allegations of personal use of a weapon and personal infliction of great bodily injury in relation to the assault with a deadly weapon conviction and the gang enhancement allegation in relation to the making a criminal threat conviction. Lodgment 6 at 5. The trial court sentenced Petitioner to ten years in prison, consisting of "three years for making criminal threats, plus five years for the gang enhancement … and a consecutive term of one year for the assault with a deadly weapon, plus one year for the great bodily injury enhancement …." Id.

On July 30, 2010, Petitioner appealed his conviction and sentence to the California Court of Appeal, Fourth Appellate District, Division One, asserting the single claim that there was insufficient evidence to support the finding that the criminal threat was committed for the benefit of the gang. Lodgment 3. In an unpublished opinion filed on April 19, 2011, the Court of Appeal affirmed the judgment. Lodgment 6. On May 20, 2011, Petitioner filed a petition for review in the California Supreme Court, which was summarily denied on June 29, 2011. Lodgments 7 & 8.

On June 12, 2012, Petitioner filed a petition for writ of habeas corpus in the Superior Court of the State of California for the County of San Diego, asserting that his Fifth, Sixth and Fourteenth Amendment rights were violated when 1) the trial court permitted the jury to see him shackled and 2) the prosecution failed to disclose an informant's identity to the defense. Lodgment 9. On August 15, 2012, the superior court denied the petition. Lodgment 10. On September 28, 2012, Petitioner raised the same claims in a petition filed with the appellate court. Lodgment 11. This petition was denied on November 2, 2012. Lodgment 12. On December 19, 2012, Petitioner raised the same claims in the California Supreme Court. Lodgment 13. The California Supreme Court denied the petition on February 13, 2013, citing "People v. Duvall

(1995) 9 Cal.4th 464, 474; In re Dixon (1953) 41 Cal.2d 756, 759." Lodgment 14.

On May 21, 2013, Petitioner filed his federal habeas petition, asserting the three claims raised in the state courts. ECF No. 1.

## SCOPE OF REVIEW

Title 28, United States Code, section 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2012).

The petition was filed after enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Under 28 U.S.C. § 2254(d), as amended by AEDPA:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2012). In making this determination, a court may consider a lower court's analysis. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to look through to the last reasoned state court decision). Summary denials are presumed to constitute adjudications on the merits unless "there is reason to think some other explanation for the state court's decision is more likely." Harrington v. Richter, 131 S.Ct. 770, 784-785 (2011).

A state court's decision is "contrary to" clearly established federal law if the state court: (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or (2)

"confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court's decision is an "unreasonable application" of clearly established federal law where the state court "'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (quoting Williams, 529 U.S. at 413). "[A] federal habeas court may not issue [a] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Id. at 75-76 (citations and internal quotation marks omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412.

If the state court provided no explanation of its reasoning, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." Harrington, 131 S.Ct. at 786. In other words, a federal court may not grant habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant Supreme Court precedent.

Finally, habeas relief also is available if the state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2) (1996); Wood v. Allen, 130 S.Ct. 841, 845 (2010). A state court's decision will not be overturned on factual grounds unless this Court finds that the state court's factual determinations were objectively unreasonable in light of the evidence presented in state court. See Miller-El, 537 U.S. at 340; see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds reviewing the record might disagree" does not render a decision objectively unreasonable). This Court will

presume that the state court's factual findings are correct, and Petitioner may overcome that presumption only by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-474 (2007).

## DISCUSSION

Petitioner asserts three grounds for relief.  ECF No. 1 at 7-10.  First, Petitioner contends that he was deprived of the Fifth, Sixth, and Fourteenth Amendments rights to a fair trial and the presumption of innocence from an unbiased jury because he was shackled in the courtroom in full view of jury.  Id. at 7.  Next, Petitioner argues that the prosecution's failure to disclose the identity of an informant, who may have had exonerating evidence, also violated Petitioner's Fourth, Fifth, and Fourteenth Amendment Rights.  Id. at 9.  Third, Petitioner argues that there was insufficient evidence to support the jury's determination that he committed the criminal threat crime for the benefit of a street gang.  Id. at 10.

Respondent initially challenges the petition on the grounds that Jessica Blonien is not the attorney general and not an appropriate respondent and that the petition is untimely.  ECF No. 6-1 at 9-13.  Respondent also contends that the California state courts reasonably and properly denied Petitioner relief.  Id. at 13-28.

## A.    Proper Respondent

The Petition names Daniel Paramo and Jessica Blonien as Respondents.  ECF No. 1 at 1. Rule 2 of the Rules Governing § 2254 Cases provides that the state officer having custody of a habeas petitioner shall be named as respondent. Rule 2(a), 28 U.S.C. foll. § 2254. The structure of the California penal system places prisoners in the custody of both the Director of Corrections and the warden of the California prison where the petitioner is incarcerated.  See Ortiz-Sandoval v. Gomez, 81 F.3d 891, 895-96 (9th Cir. 1996) (noting that "the warden of a California prison and the Director of Corrections for California have the power to produce the prisoner," and emphasizing that the Advisory Committee Notes accompanying the Rules Governing § 2254 Cases contemplate directors as possible respondents).  Thus Paramo, identified as the warden of the facility where Petitioner currently is incarcerated, is a proper respondent, whereas Blonien,

whom Petitioner identifies as the Attorney General of the State of California, is not.  Because the Court finds that Blonien and/or the California Attorney General were improperly named as a respondent, this Court **RECOMMENDS** that Respondent Blonien be **DISMISSED** as an improper party.  Petitioner argues in his reply that if the Attorney General is not a proper respondent, then the Attorney General and her deputies should not be allowed to file pleadings in this case and Petitioner asks the Court to dismiss Respondent's Answer.  ECF No. 11 at 5-6.  While the Attorney General is not a proper named respondent, she and her deputies are the attorneys who properly represent the Warden.  Accordingly, Petitioner's motion to dismiss Respondent's Answer on the grounds that it was improperly filed by the Attorney General is **DENIED**.

**B.    The AEDPA's Statute of Limitations**

The AEDPA imposes a one-year statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners.  28 U.S.C. § 2244(d) (West Supp. 2012).  Section 2244(d)'s one-year limitations period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court."  Id. § 2244(d)(1).  The one-year limitations period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. § 2244(d)(1)(A)-(D).

Here, the California Supreme Court denied Petitioner's petition for direct review on June 29, 2011.  Lodgment 8.  Petitioner did not file a petition for certiorari with the United States Supreme Court, so the judgment became final and the statute of limitations began to run on

September 27, 2011, ninety days after the California Supreme Court's decision.  See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999) (stating limitations period does not begin until after expiration of the ninety-day period authorized for seeking certiorari).  Thus, absent tolling, the limitations period expired one year later, on September 27, 2012.

The AEDPA tolls its one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending."  28 U.S.C. § 2244(d)(2); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999) (overruled on other grounds by Harris v. Carter, 515 F.3d 1051, 1053 (9th Cir. 2008)).    An application for state post-conviction review is considered "pending" during the interval between the lower state court's adverse decision and the prisoner's filing of a notice of appeal in the higher state court, provided that the filing of that notice is timely under state law.  Carey v. Saffold, 536 U.S. 214, 222-25 (2002).  In California, where habeas decisions are not appealed but may be filed originally in each court, "pending" includes a reasonable time, such as thirty to sixty days, between decision and subsequent filing. Evans v. Chavis, 546 U.S. 189 (2006) (holding that an unjustified and unexplained six-month delay is presumptively unreasonable).  The statute of limitations is not tolled, however, "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed." Nino, 183 F.3d at 1006.  Similarly, the limitations period is not tolled after state post-conviction proceedings are final and before federal habeas proceedings are initiated.  See 28 U.S.C. § 2244(d)(2).

Petitioner is entitled to statutory tolling starting on June 12, 2012, as he filed his initial habeas petition in the superior court on that date. Lodgment 9. As Respondent acknowledges, Petitioner is entitled to "gap tolling" for the time between his state habeas filings.  ECF No. 6-1 at 11.  Accordingly, the AEDPA statute ran for 258 days (September 27, 2011 to June 12, 2012) before Petitioner filed his first state habeas petition.  The AEDPA statute was then tolled from June 12, 2012 to February 13, 2013, when the California Supreme Court denied the habeas petition.  The AEDPA statute began to run again on February 14, 2013 and Petitioner had 107 days or until May 31, 2013 to file his federal habeas petition.  Because Petitioner did not file his

1  federal habeas petition until June 17, 2013, his petition is untimely unless he is entitled to

2  equitable tolling.

3       The United States Supreme Court has held that the AEDPA's one-year statute of limitations

4  is subject to equitable tolling in appropriate cases.  Holland v. Florida, 130 S. Ct. 2549, 2560

5  (2010).  While equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d 1104,

6  1107 (9th Cir. 1999), it is appropriate where a habeas petitioner demonstrates two specific

7  elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

8  circumstance stood in his way," Holland, 130 S. Ct. at 2562 (citing Pace v. DiGuglielmo, 544 U.S.

9  408, 418 (2005)).  The bar is set high to effectuate the "AEDPA's statutory purpose of

10  encouraging prompt filings in federal court in order to protect the federal system from being

11  forced to hear stale claims." Guillory v. Rose, 329 F.3d 1015, 1018 (9th Cir. 2003) (citing Carey

12  v. Saffold, 536 U.S. 214, 226 (2002)).

13       Petitioner argues that he is entitled to equitable tolling because his mental health

14  significantly impaired his ability to comply with the filing of the deadline.  ECF No. 11 at 11-14.

15  Petitioner states that between 2011 and 2013, he was repeatedly removed from his cell to

16  receive specialized psychiatric care, including being prescribed psychotropic medications.  Id.

17  Petitioner explains that he was hospitalized from February 4 to April 1, 2013 at "Chino Hospital

18  for mental illness, [where] he was prescribed psychotropic medicines that made him sleepy,

19  weak, unstable, and hard to focus on daily activities." Id. at 12.  To support his argument,

20  Petitioner attaches a letter from his psychiatrist confirming that Petitioner was involuntarily

21  admitted into a mental health hospital from March 21, 2013 to April 4, 2013 and again from April

22  19, 2013 to May 1, 2013 for "psychotic symptoms that impaired his judgment and insight." Id.

23  at 12-13, 36.  Mental illness and admittance into the hospital does constitute "extraordinary

24  circumstances." See, e.g., Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2003) (holding that

25  mental incompetency is a condition that is an extraordinary circumstance beyond a prisoner's

26  control and thus justifies equitable tolling) (citation omitted); Bills v. Clark, 628 F.3d 1092, 1097

27  (9th Cir. 2010) ("we also have long recognized equitable tolling in the context of mental illness").

28

1  Accordingly, the Court finds that Petitioner is entitled to equitable tolling from at least March 21,

2  2013 through May 1, 2013. With the additional forty days of tolling, Plaintiff's petition is timely.

3  The Court therefore **RECOMMENDS** that Respondents' motion to dismiss the petition on the

4  grounds that it is untimely be **DENIED**.

5  **C.    Procedural Bar**

6         Respondents contend that Petitioner's first and second claims for relief should be denied

7  on the grounds that they are procedurally barred.   ECF No. 19 at 14-18.   Specifically,

8  Respondents argue that Petitioner failed to raise his first and second claims on direct appeal, and

9  improperly raised them for the first time on habeas review.  Id.  Respondents assert that the

10 California Supreme Court's citation to Duvall, 9 Cal.4th at 474 and Dixon, 41 Cal.2d at 759, in

11 denying Petitioner's claims bars this Court's consideration of the claims.  Id.

12        "The procedural default doctrine 'bar[s] federal habeas [review] when a state court

13 decline[s] to address a prisoner's federal claims because the prisoner has failed to meet a state

14 procedural requirement.'"   Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129

15 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The doctrine "'is a

16 specific application of the general adequate and independent state grounds doctrine.'"  Calderon,

17 96 F.3d at 1129 (quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994)).   Under the

18 adequate and independent state grounds doctrine, federal courts "'will not review a question of

19 federal law decided by a state court if the decision of that court rests on a state law ground that

20 is independent of the federal question and adequate to support the judgment.'"  Calderon, 96

21 F.3d at 1129 (quoting Coleman, 501 U.S. at 729); see also La Crosse v. Kernan, 244 F.3d 702,

22 704 (9th Cir. 2001); Park v. California, 202 F.3d 1146, 1151 (9th Cir. 2000).

23        The Ninth Circuit has held that because procedural default is an affirmative defense,

24 Respondent must first have "adequately pled the existence of an independent and adequate

25 state procedural ground. . . ." Bennett v. Mueller, 322 F.3d 573, 586 (9th Cir. 2003).  Once the

26 defense is placed at issue, the burden shifts to petitioner, who must then "assert[] specific

27 factual allegations that demonstrate the inadequacy of the state procedure . . . ." Id.   The

28 "ultimate burden" of proving procedural default, however, belongs to the state.  Id.  If the state

1  meets this burden, federal review of the claim is foreclosed unless the petitioner can
2  "demonstrate cause for the default and actual prejudice as a result of the alleged violation of
3  federal law, or demonstrate that failure to consider the claims will result in a fundamental
4  miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.

5         In cases where the California Supreme Court has cited multiple procedural rules without
6  making clear which rule applied to which claim, federal courts have consistently required that all
7  of the procedural rules must rest on independent and adequate state grounds.  <u>Washington v.</u>
8  <u>Cambra</u>, 208 F.3d 832, 834 (9th Cir. 2000).  "[I]f it is impossible for [a] federal court to ascertain
9  whether such grounds have been relied upon, the state court decision cannot bar federal
10 review." <u>Koerner v. Grigas</u>, 328 F.3d 1039, 1052 (9th Cir. 2003).

11        Here, the burden is on Respondents to establish that both <u>Dixon</u> and <u>Duvall</u> are
12 independent and adequate state law grounds.  <u>Bennett</u>, 322 F.3d at 586.  Although Respondents
13 contend that <u>Dixon</u> is an independent and adequate state law ground, Respondents do not argue
14 that the same is true for <u>Duvall</u>.[2]  ECF No. 6-1 at 9-10.  Accordingly, Respondents have not met
15 their burden and Petitioner's first and second claims are not procedurally barred.   The Court will
16 therefore address the merits of these claims.  <u>Flournoy v. Small</u>, 681 F.3d 1000, 1004 n.1 (9th
17 Cir. 2012) ("While we ordinarily resolve the issue of procedural bar prior to any consideration of
18 the merits on habeas review, we are not required to do so when a petition clearly fails on the
19 merits.") (citation omitted).

20 **D.    Courtroom Shackling**

21        Petitioner argues that his constitutional rights were violated because the entire jury saw
22 him in court in shackles and a single juror saw him in shackles as he was being transported to
23 the courtroom by a bailiff.  ECF No. 1 at 7-8.  Petitioner argues that these two instances violated
24 his constitutional rights and convinced a jury to convict him, even though the evidence against

25

26        [2] Although courts have found that <u>Dixon</u> constitutes an independent and adequate state ground for denying
   a claim based on procedural default (see <u>Cantrell v. Evans</u>, 2010 WL 1170063, *13-14 (E.D. Cal. Mar. 24, 2010)), it
27 is unclear whether the same is true for <u>Duvall</u>.  See <u>Peyton v. Lopez</u>, 2012 WL 1203484, *7-8 (C.D. Cal. Feb. 22,
   2012) (citing <u>Reddick v. Felker</u>, 2009 WL 3165371, *4 fn. 4 (E.D. Cal. Sept. 29, 2009)) (finding no procedural default
28 when state supreme court's denial cited three separate cases, including <u>Duvall</u>, because "each of the three cited cases
   [needed to] provide[ ] an independent and adequate basis under state law for the decision").

him was weak.  Id. at 7-9.  Respondents contend that the state court's decision was not contrary to, or involved an unreasonable application of, clearly established federal law.  ECF No. 6-1 at 18-21.

Petitioner presented this argument to the state courts via habeas corpus petitions. Lodgments 9, 11, and 13.  The California Supreme Court summarily denied the petition so this Court must "look through" the silent denial to consider the appellate court's reasoning.  Ylst, 501 U.S. 804 n.3.  In denying the petition, the appellate court stated:

> Petitioner has not shown he was denied his rights to a fair trial and an impartial jury by jurors viewing him in shackles.  The record indicates he was wearing waist chains, rather than shackles, and that he was dressed in non-jail clothing with a jacket that covered the chains.  As for the juror that petitioner asserts saw him being transported to the courtroom, the juror said she saw petitioner only from the back, and the court directed her not to disclose to the other jurors that she had seen him being transported.  There is no evidence the members of the jury saw the chains.  Petitioner has not established prejudice.

Lodgment 12 at 1-2.  The trial court provided additional facts and analysis supporting the denial:

> Petitioner argues that he was shackled in full view of the jury on two occasions, and this violated his right to a fair trial under the Fifth, Sixth and Fourteenth Amendments.  The record reflects that, rather than shackles, Petitioner was wearing waist chains.  Further, he was dressed in suitable non-jail clothing for each day of his trial pursuant to an August 6, 2009 court order.  The record indicates Petitioner wore a jacket over the chains.
>
> Petitioner asserts that, on September 11, 2009, he was seen by juror number seven while being transported by the bailiff to the courtroom.  Defense counsel requested inquiry of the juror.  The trial judge directed the juror not to disclose that she saw Petitioner being transported to the courtroom with her fellow jurors.  According to Petitioner, the juror expressed only seeing Petitioner from the back.  In combination with the fact that Petitioner was wearing clothing over the waist chains, there is no evidence the juror at issue saw the chains.  Petitioner has failed to establish any prejudice, providing the court with only his self-serving assertions in his petition.
>
> As for the occurrence on September 25, 2009, while wearing waist chains, Petitioner stood up when the jury was exiting the courtroom.  He contends the jury saw the chains, despite the fact that he was wearing a jacket that, according to the record, covered most of his body.  Beyond his own conjecture, there is no evidence that the jury saw the chains.  The defense was given the opportunity to address the issue but specifically declined.

Lodgment 10 at 3.

The United States Supreme Court has held that federal due process, as set forth in the Fifth and Fourteenth Amendments, "prohibit[s] the use of physical restraints visible to the jury

absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." <u>Deck v. Missouri</u>, 544 U.S. 622, 629 (2005).  Thus, the Court held that "where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation.  The State must prove 'beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained.'" <u>Id.</u> at 635 (citing <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967)).  In order to state a claim for unconstitutional shackling, a petitioner must show that he was shackled in the presence of the jury, that the shackling was seen by the jury, and that shackling was not justified by state interests.  <u>Ghent v. Woodford</u>, 279 F.3d 1121, 1132 (9th Cir. 2002).  However, where a jury is only briefly exposed to a defendant's shackles, this does not give rise to a constitutional violation.  <u>United States v. Olano</u>, 62 F.3d 1180, 1190 (9th Cir. 1995) (a juror's brief exposure to a defendant in shackles requires showing of actual prejudice).  Similarly, no constitutional violation lies where a defendant is seen entering the courtroom wearing shackles after a recess, or when a defendant is seen in shackles outside of the courtroom.  <u>Id.</u>; <u>United States v. Halliburton</u>, 870 F.2d 557, 561 (9th Cir. 1989).

      Here, the trial record supports the factual determinations made by the state courts.  On September 25, 2009, Petitioner's attorney was not present for trial, due to an illness.  Lodgment 1, Vol. 8 at 1476-78.  Because the jury only was brought in to be excused for the day, Petitioner's waist chain was mistakenly left on.  Lodgment 1, Vol. 9 at 1480.  The record establishes that Petitioner wore a long jacket over the waist chain and remained seated during the majority of the brief proceeding.  <u>Id.</u>  The judge stated that he was "satisfied" the jury was unable to see or notice the waist chain while the Petitioner was seated.  <u>Id.</u>  However, Petitioner instinctively stood up when the jury was leaving.  <u>Id.</u>  The deputy stated that it appeared to him that the jurors did not look at Petitioner when he stood up as they just filed out of the courtroom.  <u>Id.</u>  The judge noted that the jacket "covered probably 270 degrees of [Petitioner's] body, back and sides" and opined that he "think[s] it's unlikely that the jurors saw anything." <u>Id.</u> at 1480-81. The record does not contain any evidence that a juror saw the waist chains.

After hearing all of the facts, Petitioner's attorney asked the judge not to make any further inquiry. Id. at 1481. As such, the record does not support Petitioner's argument that the jury observed him wearing shackles or that he was prejudiced by the brief observation.

Although Petitioner cites to Rhoden v. Rowland, 172 F.3d 633 (9th Cir. 1999), for the proposition that a defendant "cannot be shackled in the presence of the jury without a compelling security need," the facts in Rhoden are easily distinguishable. In that case, the defendant's shackles were consistently seen by several jurors throughout trial. Id. at 637. Moreover, at an evidentiary hearing held six years after Rhoden's trial, several jurors testified that they talked about Rhoden's shackles during his trial. Id. The court, therefore, found there was a strong likelihood that Rhoden was prejudiced by the shackling. Id. In this case, however, there is no evidence that the jury saw Petitioner's waist chains so any error was harmless. Id. ("when a defendant's shackling was not actually seen by the jury during the trial, we have held that the shackling was harmless error") (citation omitted). Even if the jury had seen Petitioner's waist chains, this would not give rise to a constitutional violation absent a showing of actual prejudice. See Olano, supra, 62 F.3d at 1190.

Petitioner's claim that he was prejudiced by the incident on September 11, 2009 - where juror number seven allegedly saw Petitioner being transported to the courtroom in shackles - fails for the same reasons. ECF No. 1 at 8. When the trial court asked juror number seven whether she saw Petitioner's shackles, juror number seven stated, "I just saw the back of him" and "I didn't see anything, honest." Lodgment 1, Vol. 3 at 214. The trial judge then instructed juror number seven not to discuss with her fellow jurors the fact that she saw Petitioner outside of court and the juror promised not to do so. Id. Hence, there is no evidence supporting Petitioner's contention that juror number seven saw him in shackles and there is no evidence to indicate any type of prejudice resulting from the brief observation. As set forth above, even if juror number seven did see Petitioner's shackles, this brief observation would not give rise to a constitutional violation. See Ghent, 279 F.3d at 1133 (the jurors' occasional, brief glimpses of the defendant in handcuffs and other restraints in the hallway at the entrance to the courtroom was not prejudicial); Olano, 62 F.3d at 1190 ("a jury's brief or inadvertent glimpse of a defendant

in physical restraints is not inherently or presumptively prejudicial to a defendant"). Accordingly, state court's denial of Petitioner's claim was not contrary to or an unreasonable application of clearly established federal law and the Court **RECOMMENDS** that Petitioner's first claim be **DENIED**.

**E.    Failure to Disclose Informant Information**

In his second claim, Petitioner argues that his Fourth, Fifth and Fourteenth Amendment rights were violated when the prosecution failed to disclose to the defense the identity of an informant who "may have been able to give evidence that might exonerate the Petitioner." ECF No. 1 at 9. Petitioner acknowledges that his trial counsel filed a motion to compel production of discovery, including the identity of any informant, and that the original judge denied the motion after conducting an *in camera* hearing and another judge denied it again upon reconsideration. ECF No. 11 at 21-22. Petitioner argues that the judges abused their discretion when they denied the motion and the prosecutor violated the requirements of federal law when he failed to turn over information about the informant. Id. at 20-23. Respondents contend Petitioner's argument fails to state a federal question and that the state court's decision was not contrary to, or involved an unreasonable application of, clearly established federal law. ECF No. 6-1 at 21-25.

Petitioner presented this argument to the state courts via habeas corpus petitions. Lodgments 9, 11, and 13. The California Supreme Court summarily denied the petition so this Court must "look through" the silent denial to consider the appellate court's reasoning. Ylst, 501 U.S. 804 n.3. The trial and appellate courts denied the petition because the challenged trial court ruling was an evidentiary issue that should have been raised on direct appeal, and was not appropriate for habeas review. Lodgments 10 at 3 and 12 at 2. Because none of the state courts decided the issue on the merits, this Court must determine what theories could have supported the state court's decision and then whether those theories are inconsistent with the court's ruling. Harrington, 131 S.Ct. at 786.

A state's interpretation of its laws or rules does not provide a basis for federal habeas corpus relief when no federal constitutional question arises. Estelle v. McGuire, 502 U.S. 62, 68

(1991).  "Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected."  Whelchel v. Washington, 232 F.3d 1197, 1211 (9th Cir. 2000) (internal citation and quotations omitted).  With respect to an incorrect evidentiary ruling, in order to establish a constitutional violation, a petition on habeas review must show that the evidentiary ruling was so prejudicial that it rendered the trial "fundamentally unfair."  Ortiz-Sandoval, 81 F.3d at 897.

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."  373 U.S. 83, 97 (1963).  To state a claim for habeas relief under Brady, a petitioner must show that (1) the evidence at issue is favorable to the accused; (2) it was suppressed by the government; and (3) the suppression prejudiced the accused.  Banks v. Dretke, 540 U.S. 668, 691 (2004) (citation omitted).  Evidence is "material" when there is a reasonable possibility that the evidence withheld would be decisive to the outcome of the case.  Cone v. Bell, 556 U.S. 449, 451 (2009) (citation omitted).

The government has a limited privilege to withhold the identity of a confidential informant.  Roviaro v. United States, 353 U.S. 53, 59 (1957); United States v. Sai Keung Wong, 886 F.2d 252, 255 (9th Cir. 1989).  However, the privilege is not absolute, and must give way where the disclosure of the informant's identity "is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause."  Roviaro, 353 U.S. at 60-61.  When disclosure of an informant's identity would not lead to testimony or other evidence that would be material to the defense, disclosure is not required.  United States v. Gonzalo-Beltran, 915 F.2d 487, 489 (9th Cir. 1990).  The burden is on the defendant to demonstrate a need for disclosing the identity of an informant, and mere suspicion that such information will prove helpful is not sufficient.  U.S. v. Williams, 898 F.2d 1400, 1402 (9th Cir. 1990).

As an initial matter, to the extent Petitioner's claim is premised on the allegation that the trial judges violated California state law when they denied Petitioner's motion for disclosure of the informant's identity (i.e. that the trial judges incorrectly applied the applicable provisions of

the California Evidence Code relating to confidential informants), it does not state a claim for federal habeas relief. <u>Whelchel</u>, 232 F.3d at 1211.  Moreover, Petitioner has not established that the ruling was incorrect and he has not provided any facts indicating prejudice resulting from the allegedly incorrect ruling nor has he established that it rendered the trial "fundamentally unfair." <u>Ortiz-Sandoval</u>, 81 F.3d at 897.

To the extent Petitioner's claim is premised upon a federal <u>Brady</u> or <u>Roviaro</u> violation, a further analysis is required.  The parties stipulated that Delgado was a drug dealer and that after the stabbing but before the police arrived, Delgado flushed some drugs down the toilet.  ECF No. 1 at 9; Lodgment 1, Vol. 8 at 1437-38, 1443.  Petitioner determined that it was likely that an informant had provided information about Delgado's drug dealing so he filed a motion seeking information about the informant. ECF No. 1 at 9; Lodgment 11 at 14-15[3]; Lodgment 1, Vol. 1 at 36-45.  Petitioner argued that the production of the informant's identity was relevant and required because it could discredit Delgado and, because drug dealing is inherently dangerous, it might exonerate Petitioner by identifying the real attacker and the real reason for the attack. Lodgment 1, Vol. 1 at 42-44, Vol. 2 at 42-54.  A state court judge conducted an *in camera* hearing and denied Petitioner's motion on the grounds that Petitioner had failed to show a nexus between the stabbing and any drug activity.  Lodgment 11 at 15; ECF No. 11 at 21-23.  Upon reconsideration, a second judge determined that the information was confidential and properly withheld pursuant to state law but held that the proposed stipulation regarding Delgado's drug dealing activities was appropriate.  Lodgment 1, Vol. 2 at 69-74, 84-89, 93-97.  As a result of the judge's ruling, the following stipulation was presented to the jury: "It's hereby stipulated that the witness, Jose Delgado, has sold methamphetamine to friends and acted as a middleman in drug transactions.  He has sold methamphetamine from his house on 50th Street.  Several years ago, he also sold some drugs while living in Mexico.  It's further agreed that Mr. Delgado flushed an unknown amount of an unknown type of drugs after the stabbing before the police got to the

---

[3] The federal petition only contains one page of argument as to Claim 2. ECF No. 1 at 9.  Petitioner appears to have presented the same argument to the state court so this Court is considering the argument set forth in the state habeas petition for this argument.  Lodgment 11 at 14-16.

house." Id. at 97; Lodgment 1, Vol. 8 at 1437-38, 1443.

Based upon these facts, Petitioner has not established a constitutional violation. Petitioner was able to present evidence during trial and argue that Delgado was not a credible witness because he had engaged in illegal drug activity and, in fact, was engaging in illegal drug activity the evening of the stabbing. Beyond that credibility issue, Petitioner has not established any nexus between Delgado's drug activity and the stabbing. Petitioner has not established that the identity of the informant was evidence that was favorable to Petitioner or that its suppression prejudiced Petitioner. Rather, Petitioner merely speculates that the identity of the informant might be helpful and might add credibility to his argument that someone else committed the charged crimes. This is insufficient to establish a constitutional violation. Banks, 540 U.S. at 691; Williams, 898 F.2d at 1402. Accordingly, the Court **RECOMMENDS** that Petitioner's second claim be **DENIED**.

## E.   Sufficiency of the Evidence

In his third claim, Petitioner argues his constitutional rights were violated because there was insufficient evidence to support the jury's finding that the crime was committed to benefit a criminal street gang pursuant to Penal Code § 186.22(b)(1). ECF No. 1 at 10-14. Respondents contend that the state court's decision was not contrary to, or involved an unreasonable application of, clearly established federal law. ECF No. 6-1 at 26-28.

The California Supreme Court denied the petition without citation of authority so this Court must "look through" the silent denial to consider the appellate court's reasoning. Ylst, 501 U.S. 804 n.3. In denying the appeal, the appellate court stated:

> To impose the gang enhancement, the People had to prove Hernandez made the threats to shoot attendees of Delgado's party both (1) "for the benefit of, at the direction of, or in association with any criminal street gang"; and (2) "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22 subd. (b)(1).) We conclude the testimony introduced at trial was sufficient to establish both elements.
>
> The People proved the first element of the enhancement through a combination of percipient witness testimony establishing that Hernandez made criminal threats and expert testimony establishing that he made the threats for the benefit of the Logan Heights gang. "In order to prove the elements of the criminal street gang enhancement, the prosecution may, as in this case, present expert testimony on criminal street gangs." People v. Hernandez, 33 Cal.4th 1040, 1047-

1048 (2004).  In particular, a gang expert may explain how the criminal conduct by gang members established by the evidence would benefit a gang by intimidating the residents of an area into allowing the gang to continue its criminal activities in the area because of fear of retaliation if the residents do not let them do so.  People v. Gardeley, 14 Cal.4th 605, 619 (1996); People v. Vazquez, 178 Cal.App.4th 347, 354 (2009).

Here, several witnesses testified that after the fight with Vergara, Hernandez mixed shouts that he was a member of the Logan Heights gang with his threat to retrieve a gun from his home across the street so that he could shoot attendees of Delgado's party.  The parties stipulated that Logan Heights is a criminal street gang within the meaning of section 186.22, subdivision (b)(1).  Detective Garcia testified that the Clicka faction of the gang, to which Hernandez belonged, operated in the Mid-City area, where Hernandez made the threats.  Detective Garcia also explained that gang members shout the name of their gang in this way to secure the gang's "turf" by making neighborhood residents unwilling to contact or cooperate with law enforcement for fear of retaliation.  "This intimidation, obviously, makes it easier for the gang to continue committing the crimes for which it is known, from graffiti to murder."  Vazquez, supra, 178 Cal.App.4th at p. 354.  Detective Garcia's testimony, coupled with that of the percipient witnesses who testified to the facts underlying his opinions, was therefore sufficient to establish that Hernandez made his threats for the benefit of the Logan Heights gang.

The People also established the second element of the enhancement - that Hernandez made criminal threats "with the specific intent to promote, further, or assist in any criminal conduct by gang members."  (§ 186.22 subd. (b)(1).)  This element does not "require[] that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*.  Albillar, supra, 51 Cal.4th at p. 67.  This element "applies to *any* criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced.  Id. at p. 66.  Thus, a gang member's threat to shoot a victim is sufficient to satisfy the second element of the section 186.22, subdivision (b)(1) enhancement.  People v. Hill, 142 Cal.App.4th 770, 772 (2006).

Here, Hernandez's wife testified that he was a member of the Clicka faction of the Logan Heights gang.  Several other witnesses testified Hernandez threatened to retrieve a gun from his house and return to Delgado's party so that he could shoot everyone.  The jury reasonably could conclude from this testimony that in making the criminal threats, Hernandez specifically intended to promote, further, or assist criminal conduct by a gang member, namely Hernandez himself.  "Therefore, [Hernandez's] own criminal threat qualified as the gang-related criminal activity.  No further evidence on this element was necessary."  Hill, supra, 142 Cal.App.4th at p. 774.

We are not persuaded by Hernandez arguments that "this is not a gang case" because his threats were merely "personal" and concerned the recent car exchange between him and Delgado.  If that were so, Hernandez would have directed his threats only at Delgado, rather than at everyone at the party; and he would not have shouted repeatedly that he was a Logan Heights gang member as he made the threats.  From the fact that Hernandez "announced the gang's name" "[m]ore than once during the [threats]," the jury could reasonably conclude his threats were gang related.  People v. Mendez, 188 Cal.App.4th 47, 57 (2010); see also Hill, supra, 142 Cal.App.4th at pp. 772, 774 (gang member who mentioned gang's name

19

13cv1217-BEN (BLM)

when he threatened to shoot victim committed crime for benefit of gang).

Lodgment 6 at 6-9 (citations altered for formatting, footnote omitted).

The clearly established federal law regarding sufficiency of the evidence claims in the criminal context is set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  Jackson claims face a high bar in federal habeas proceedings.  Coleman v. Johnson, 132 S.Ct. 2060, 62 (2012).  In Jackson, the Court held that the Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324.  In making this determination, habeas courts must respect "the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict."  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) (citing United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.1992)).  "Although it might have been possible to draw a different inference from the evidence, [a federal habeas court is] required to resolve that conflict in favor of the prosecution."  Ngo v. Giurbino, 651 F.3d 1112, 1114-15 (9th Cir. 2011); see also Coleman,132 S.Ct. at 2062.  (stating that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'") (quoting Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) (per curiam)); and Jackson, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").  Federal habeas courts also must analyze Jackson claims "with explicit reference to the substantive elements of the criminal offense as defined by state law." Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting

Jackson, 443 U.S. at 324 n.16).  When assessing the evidence presented at trial, a reviewing court must conduct a thorough review of the state court record.  Jones v. Wood, 114 F.3d 1002, 1013 (9th Cir. 1997).

The Ninth Circuit has made clear that "[a]n additional layer of deference is added to this standard by 28 U.S.C. § 2254(d), which obliges [Petitioner] to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted Jackson standard."  Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005)).  In Allen, the Ninth Circuit first reviewed the standard of review applied by the state appellate court to a sufficiency of the evidence claim, and found that although the state court did not cite to the relevant federal case law, "such a citation is not required 'so long as neither the reasoning nor the result of the state-court decision contradicts' Supreme Court precedent."  Id. at 1274 n.12, quoting Early v. Packer, 537 U.S. 3, 8 (2003).  Accordingly, it falls to this Court to determine whether the state appellate court opinion here "reflected an unreasonable application of Jackson . . . to the facts of this case."  Juan H., 408 F.3d at 1275.

As the appellate court correctly stated, "[t]o impose a gang enhancement, the [prosecution] had to prove [Petitioner] made the threats to shoot attendees of Delgado's party both (1) 'for the benefit of, at the direction of, or in association with any criminal street gang' and (2) 'with the specific intent to promote, further, or assist in any criminal conduct by gang members.'"  Lodgment 5 at 6 (citing Pen. Code § 186.22(b)(1)).  Petitioner argues that there was insufficient evidence to establish either element of the crime because the crime was committed for personal reasons, not gang reasons.  ECF Nos. 1 at 10-14; 11 at 24-30.  Petitioner acknowledges that he was angry about the car trade between Petitioner and Delgado and that he mouthed off but he denies that the angry outburst had anything to do with gang membership.  ECF Nos. 1 at 10-11; 11 at 26.  Petitioner emphasizes that no gang paraphernalia or writings were found during the search of his home.  ECF No. 1 at 12.  Finally, Petitioner challenges the value of the expert testimony provided by the gang expert.  ECF Nos. 1 at 10-11, 11 at 28-29.  Petitioner also repeatedly denies in his pleadings that he was a gang member and submits an October 18, 2013, declaration asserting the same.  ECF No. 11 at 26-29, 38.

A review of the trial transcript establishes that there was sufficient evidence to support the gang enhancement finding.  Initially, Petitioner's wife testified that Petitioner was a Logan Clicka gang member and other witnesses provided testimony supporting that conclusion.  Lodgment 1, Vol. 3 at 279 (Sandra Hernandez); see also Lodgment 1, Vol. 3 at 174-254 (testimony of Jose de Jesus Vergara who admitted being a Logan gang member and repeatedly denied all statements indicating that Petitioner was a gang member); Lodgment 1, Vol. 5 at 789-90, 799 (testimony of Javier del Castillo that he believed Petitioner claimed gang membership with Logan while yelling after the stabbing).  Secondly, multiple witnesses who observed at least the end of the altercation between Petitioner and the victim and/or heard Petitioner's yelling around the time of the stabbing testified to hearing Petitioner yell threats, which included the gang name "Logan," profanities, and that he has a gun at his house.  Lodgment No. 1, Vol. 4 at 446-47, 450-52 (Jesus Andres Becerra-Cesena); Id. at 559, 562-63 (Jose Delgado); Id. at 786-88, 801-04 (Javier del Castillo).  In addition, Jose Delgado testified that he received a voice mail message in which Petitioner told Delgado not to snitch on him, that Petitioner was going to kill him, and that he "didn't give a fuck, that he's Logan and he don't care."  Lodgment 1, Vol. 4 at 573-74.  Finally, the parties stipulated that the Logan Heights street gang, which includes Logan Heights Red Steps and Logan Clicka gang members, is a criminal street gang.  Lodgment 1, Vol. 5 at 814.  The victim, Jose de Jesus Vergara, testified about gang rules, including that gang members frequently retaliate against "snitches," people who testify against fellow gang members, and that gang members are expected to "back up" other gang members when one person gets in a fight. Lodgment 1, Vol. 3 at 236-45; see also Lodgment 1, Vol. 5 at 799-800 (Javier del Castillo testified that he was scared of Petitioner because based upon what Petitioner yelled, del Castillo believed Petitioner was a gang member and gang members use violence to support their fellow gang members and to get even with those who testify against them).

The witness testimony is supplemented by police detective Manuel Garcia's expert testimony on gangs.  Lodgment 1, Vol. 7 at 1151-82.  Garcia testified that the Logan Heights street gang has several subsets, including Logan Red Steps and Logan Clicka, and that Logan Clicka has less status than the other subsets so its members are always trying to prove

themselves.  Id. at 1153-55.  Garcia explained that gang members get documented by committing crimes and that the gang members use violence against innocent, uninvolved community members in order to keep them from talking to the police.  Id. at 1157-58.  Garcia also said that gang members will use violence to retaliate against any person who talks to the police or testifies against another gang member.  Id.  Garcia further explained that gang members often yell their gang's name while committing a crime in order to threaten any witnesses and suppress their desire to help with an investigation against the gang member.  Id. at 1159-63.  Garcia testified that committing crimes and preventing people from talking to the police benefits the street gang and enhances their power or status.  Id. at 1164-65.

As summarized above, there is substantial evidence supporting the jury's determination that Petitioner was a member of a street gang, that he made the criminal threats during the assault for the benefit of or in association with the Logan Clicka street gang and that he had the specific intent to promote, further, or assist in any criminal conduct by gang members.  The jury's determination, therefore, was not unreasonable and the state court's analysis and decision denying the sufficiency of evidence claim was not "contrary to or an unreasonable application of Federal law."  28 U.S.C. § 2254(d)(1).  For these reasons, this Court finds Petitioner's sufficiency of the evidence claim to be without merit and **RECOMMENDS** that third claim be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS ORDERED** that no later than **March 7, 2014**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

///

///

///

1  ///

2  ///

3  ///

4  ///

5

6      **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court

7  and served on all parties no later that **March 21, 2014**.  The parties are advised that failure to

8  file objections within the specified time may waive the right to raise those objections on appeal

9  of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

10     **IT IS SO ORDERED.**

11

12  DATED:  February 12, 2014

13

14                                    BARBARA L. MAJOR
                                     United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28